(C. D. 1936)

KURT ORBAN CO., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided November 14, 1957)

*Sharretts, Paley & Carter* (*Howard C. Carter* and *Richard F. Weeks* of counsel) for the petitioner.

*George Cochran Doub,* Assistant Attorney General (*Daniel I. Auster* and *Samuel D. Spector,* trial attorneys), for the respondent.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: Petitioner herein seeks to recover the additional duties imposed upon certain reinforcing bars, which duties were assessed by virtue of the fact that the final appraised value of said merchandise exceeded the value declared on entry. The imposition of the additional duties and the method by which remission of them may be had is provided for in section 489 of the Tariff Act of 1930 (19 U. S. C. § 1489), as amended by the Customs Simplification Act of 1953, 67 Stat. 507, 517.

The importation involved covered seven invoices of merchandise. Due to the failure of the entrant to include in the entered value of said shipments a charge of $1.80 per thousand kilograms for deforming and, in addition thereto, as to invoice No. 4, a charge of 70 cents per thousand kilograms for a test certificate, the duties sought to be refunded were imposed.

When the case was called for hearing before the court, petitioner offered the testimony of three witnesses: Henry E. Sullivan, Jr., of McGiffin & Co., a customs brokerage firm, who prepared the involved entry at petitioner's direction; Ernest J. Richter, traffic manager for Kurt Orban Co., Inc., actual importer and petitioner herein; and Philip Grossman, customs examiner at the port of New York for 28 years. On respondent's behalf, W. B. Lankford, customs agent at Miami, Fla., was called to testify.

From the testimony of the foregoing witnesses, it appears that, upon importation of the reinforcing bars, the necessary papers had been sent by Kurt Orban to McGiffin & Co. for the preparation of entry documents. Sullivan prepared a submission sheet in accordance with his usual custom, a copy of which had been mailed to Kurt Orban Co., Inc. The appraiser at Jacksonville, Fla., endorsed said sheet with the following notation: "No current information as to market value. Ascertain market value from shipper." Upon information received from his principal, entry of the merchandise was made by the customs broker.

Subsequently, the appraiser sent a notice of contemplated appraisement to McGiffin & Co., advising it that the proper values for appraisement purposes would be "$104.00 per M. Kgs., plus all applicable extras for size, cutting tolerance, marking, deforming, etc.," as to invoices 1, 2, 3, 5, 6, and 7, and "$110.00 per M. Kgs., plus all applicable extras as above mentioned," as to invoice No. 4, and affording an opportunity to amend the entry (petitioner's exhibit 3). Immediately upon receipt of said notice of contemplated appraisement, Sullivan, upon instructions of Kurt Orban Co., Inc., amended the entry, indicating the value thereof to be $104 per thousand kilograms for invoices 1, 2, 3, 5, 6, and 7 and $110 per thousand kilograms as to invoice 4, plus, in each instance, $1.80 per thousand kilograms for die stamping. Although the invoices indicated the bars to be "deformed" reinforcing bars, no charge for deforming was included in the entry value for the reason that it was the understanding of Sullivan and Richter that said charges were included in the unit price.

It appears from the testimony that there was an international pricelist on extras which was issued by the Benelux Organization, an association of manufacturers in France and Germany, and which was in the possession of the local appraiser and available to the petitioner in this case. It was the testimony of Richter, however, that each individual transaction was handled individually, and it was his understanding that, at the time of the instant importations, deformation charges, die-stamping charges, and certificate charges were included in the unit price, depending on the mill and the country from which the material was purchased.

Richter stated that he had never issued any blanket instructions to McGiffin & Co. not to amend an entry until such action was requested by the appraiser, but that specific instructions to that effect might have been made as to a particular entry and that it was not the entry presently before the court. Sullivan corroborated such testimony by stating that he, on behalf of McGiffin & Co., the customs broker, had never received any such blanket instructions.

Philip Grossman, customs examiner at the port of New York, stated that, at or about the time of the present importation, the prices for reinforcing bars were subject to frequent fluctuations and that he had various sources of information, including frequent conversations with Kurt Orban and Ernest J. Richter of the Kurt Orban Co. He stated that he had told Orban and Richter that any information furnished to the appraiser at New York would be circulated through the Customs Information Exchange to all the appraising officers throughout the country who had steel imports, explaining that it was desirable that this information should be submitted through him for purposes of uniformity and expedition. He added that Kurt Orban had been most cooperative in obtaining any information that he desired relative to the value of its shipments at New York or any other port in the United States.

From the record before us, it is apparent that the crux of this case is whether or not the failure of the petitioner, on entry, to add to the unit value additional charges for deforming and a test certificate was with any intent to defraud the revenue of the United States, to conceal or misrepresent the facts, or to deceive the appraiser as to the value of the merchandise. In the light of this issue, it is difficult for us to understand the emphasis placed by respondent in its brief upon the fact that there was a disparity in the unit value of the merchandise as originally entered and the unit value of the merchandise by a subsequent timely amended entry upon which final appraisement was made. No additional duties accrued or were assessed by reason of this disparity. The amended entry became the entry for purposes of appraisement, and the additional duties were assessed solely for failure to include therein the extra charges. Therefore, references in the Government brief pertaining to the original entry and cases deemed applicable thereto need not be considered by us.

What is required of a petitioner in an action such as this to bring about the remission of additional duties pursuant to section 489 of the Tariff Act of 1930 has been set forth in many decisions of this and of our appellate court and is concisely stated in *Wolf & Co.* v. *United States*, 13 Ct. Cust. Appls. 589, T. D. 41453, as follows:

* * * Summarized, these adjudged cases announce certain fundamental facts which the petitioner must establish if he is to obtain relief: First, he must show

that in undervaluing his goods he was acting in entire good faith; second, that there were no facts or circumstances known to the petitioner when he made his entry which would cause a prudent and reasonable person to question the correctness of the values given by him; third, that he has made to the collector in making his entry, a full and candid disclosure of all the material facts in his possession bearing upon the value of the merchandise imported.

In the case at bar, the record discloses that the only difference between the entered value and the final appraised value was $1.80 per thousand kilograms for deforming as a charge additional to the unit value and, in the case of invoice No. 4 accompanying the involved entry, an additional charge of 70 cents per thousand kilograms for a test certificate.

While it is true that the notice of contemplated appraisement (petitioner's exhibit 3) unquestionably was sufficient to alert the entrant to possible additional charges "for size, cutting tolerance, marking, deforming, etc.," and the further fact that the invoice description of the imported merchandise designated the articles as "deformed" reinforcing bars, the record also is clear that the failure to include a charge for deforming to the unit entered value was not through oversight, carelessness, or lack of due diligence in determining the proper value of the merchandise, but rather in the firm belief that said charge formed part of and was included in the unit entered value. It is to be discerned from the record also that it was for the same reason that the additional charge of 70 cents per thousand kilograms for test certificate was not added to the entered value of merchandise covered by invoice No. 4.

On the matter of additional charges, there is conclusive evidence that there was no withholding of information on the part of petitioner. An international pricelist of additional charges, including those for deforming and test certificates, which was issued by the Benelux Organization, an association of foreign manufacturers, was known by the petitioner to be in the possession of the local appraiser.

As further evidence of the awareness on the part of petitioner of the applicability of extra or additional charges to be added to the unit value is the fact that, in amending its entry, it added to the unit value a charge of $1.80 per thousand kilograms for die stamping.

It appears, therefore, that the difference between the entered value and the final appraised value of the merchandise in controversy was the result of an honest difference of opinion and should not be a barrier to the relief here sought by petitioner. As was said in the case of *P. Pastene & Co. (Inc.)* v. *United States*, 21 C. C. P. A. (Customs) 69, T. D. 46392:

The fact that the merchandise was finally appraised at an advance over the entered value is not conclusive of lack of good faith. An importer, after making diligent inquiry concerning the foreign value of imported merchandise, may

innocently make an entry of the same at less than its real value. If he is honest and diligent in attempting to determine the correct value for the purpose of making entry, he should not be denied the benefits of said section 489 solely because the value thus found is less than the real value.

Both at the hearing and in its brief, the Government points to the case of *A. N. Deringer, Inc.* v. *United States*, 42 C. C. P. A. (Customs) 28, C. A. D. 565, as analogous to the situation here presented and in which decision the court stated:

The Customs Court observed that the petitioner's disposition was a passive one and that the witness relied completely on the customs personnel to do that which the law required him to do. We have found nothing in the record which conflicts with that view. There was a duty upon appellant to enter the merchandise at the proper value and that duty was not discharged. *United States* v. *Balfour, Guthrie & Co., Ltd.*, 39 C. C. P. A. (Customs) 199, C. A. D. 487.

From the decision in that case, it appears that the petitioner, at time of entry, executed a submission sheet directed to the appraiser, which was promptly returned with the information that the appraiser had no information concerning value. Entry was made at the value stated in the consular invoice, which was assumed to be correct, and at no time did the entrant consult with the importer as to the true value. Moreover, no attempt was ever made to amend the entry. As stated by the court—

From the record it appears that about all appellant's employee did to ascertain the correct dutiable value of the merchandise was to file the submission sheet requesting information and wait for the appraiser's action thereon. * * *

The record in the present case, rather than showing a passive disposition on petitioner's part and complete reliance on the customs personnel to do that which the law required it to do, discloses an awareness of responsibility to enter the merchandise at its proper value and diligent effort to bring about that result by consulting with the importer. We, therefore, do not consider the *Deringer* case, *supra*, to be in point here.

Apart from the honest difference of opinion between the petitioner and the appraiser as to the applicability of deforming and certificate charges to the instant merchandise, we are of the opinion that there has been affirmative presentation of satisfactory evidence that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States, or to conceal or misrepresent the facts of the case, or to deceive the appraiser as to the value of the merchandise. The petition for the remission of additional duties is, therefore, granted.

Judgment will be entered accordingly.