No. 63064.—Kurt Orban Co., Inc., et al. *v.* United States, petitions 6932–R, etc. (Jacksonville).

FORD, Judge: The petitions listed in schedule "A," hereto attached and made a part hereof, were filed under the provisions of section 489 of the Tariff Act of 1930 and seek remission of additional duties assessed pursuant to undervaluation on entry of certain imported steel products at the port of Jacksonville, Fla.

The merchandise covered by the petitions before the court, except petition 7157–R, consists of deformed steel concrete reinforcing bars, exported from Germany and entered between November 26, 1951, and November 29, 1951, at the invoice value of $123.40 per thousand kilos. These bars were appraised at $135 per thousand kilos, plus a deforming extra of $2 per thousand kilos, less 10 per centum, plus size extra of $1.60 per thousand kilos, less 10 per centum, net packed. The resultant advance on all of these entries was 12 per centum. In entry J–279, covered by petition 6933–R, the merchandise was entered at $122 per thousand kilos and was appraised at $135 per thousand kilos, plus a deforming extra of $2 per thousand kilos, less 10 per centum. There was no addition for "size extra," so that the resultant advance of the merchandise covered by this entry is also 12 per centum.

Petition 7157–R covered steel sheets, exported from Germany on April 25, 1951, and entered on May 7, 1951, at $142 per thousand kilos. The merchandise was appraised at $142 per thousand kilograms, net packed, plus extras as follows:

| | | |
|---|---|---|
| For thickness | $2.40 | |
| For width | 1.90 | per thousand kilos |
| For length | 1.40 | |

Less 10 per centum discount on extras only

The resultant advance for merchandise covered by this petition is 3 per centum.

At the time of hearing, the three petitions involved herein were consolidated for the purpose of trial. In addition, the record in *Jno. G. McGiffin et al.* v. *United States*, 38 Cust. Ct. 438, Abstract 60574, and the record in *Kurt Orban Co., Inc.* v. *United States*, 39 Cust. Ct. 248, C.D. 1936, were incorporated herein. It was then stipulated by and between counsel for the respective parties that if witnesses Richter, Sullivan, and Orban, who testified for the plaintiffs in Abstract 60574, *supra*, were called in this proceeding by the petitioners each of them would testify that entry of the merchandise at a lesser value than that returned on final appraisement was without intention to defraud the revenue of the United States, or to conceal or misrepresent the facts of the case, or to deceive the appraiser as to the value of the merchandise. Counsel for the defendant then moved to dismiss the petitions on the ground that petitioners have failed to make out a *prima facie* case. Said motion is hereby denied.

Upon this record, the case was submitted for decision.

The issue in the *McGiffin* case, *supra*, was raised by the filing of protests against the collector's liquidations on the ground that the appraisements were invalid. It was contended that the invalidity of the appraisements was due to the failure of the appraiser to comply with section 14.4(*d*) of the Customs Regulations of 1943, as amended. The court granted defendant's motion to dismiss the protests. The record made in this case is particularly pertinent to the petitions presently under consideration, since the same entries covered by the petitions were covered by the protests therein involved, except entry J–669, covered by petition 7157–R.

The record in the *McGiffin* case, *supra*, establishes that the importer regularly supplied Examiner Grossman, the examiner at the port of New York, who handles merchandise such as involved herein, with lists setting forth price information with respect to various types of German steel imported by it. It was also established that such information was given with the understanding and assurance of Examiner Grossman that such information would be circularized through the Customs Information Exchange at New York to all ports of entry, including the nine ports through which the importer regularly enters its merchandise. Plaintiffs' collective illustrative exhibit 1 supports the contention of the petitioners of active, continuous cooperation with United States customs officials with respect to information regarding prices of German steel. Plaintiffs' collective illustrative exhibit 1 consists of 11 letters, one each month, for the period from March 1951 to January 1952. The record also clearly establishes that the steel market during the period of importation involved herein was erratic and, accordingly, it was difficult to ascertain the correct value for duty purposes.

In the *Orban* case, *supra*, the record made therein is not particularly pertinent herein, since the petition covered merchandise imported during a different period and exported from a different country. However, there is the testimony of Examiner Grossman to the effect that information was regularly received by him from petitioner regarding the prices for German steel imported as well as his corroboration that such information was received with the understanding that it would be circulated by the Customs Information Exchange to all ports

of entry and was in fact so circulated. In addition, Examiner Grossman testified that Kurt Orban had been most cooperative in obtaining any information he desired relative to any of its shipments at New York or any other port in the United States.

In petition 7157–R, covering steel sheets, the only difference between the entered value and the appraised value was the amounts added as "extras" for thickness, width, and length. As indicated, *infra*, the inclusion or exclusion of charges for "extras" appears to be an honest difference between the importer and customs officials.

The case of *Kachurin Drug Co.* v. *United States*, 26 C.C.P.A. (Customs) 356, C.A.D. 41, cited by respondent, is distinguishable from the case at bar. In the *Kachurin* case, *supra*, the importer was given an opportunity to amend, but did not do so. In the instant case, there was no opportunity to amend the entries.

While it is true that the Government is under no obligation to supply the information requested by a submission sheet and the importer once submitting such a sheet is not relieved of ascertaining the correct value, the petitioners herein are not merely relying upon a submission of such sheets or the failure of the Government to advise them of value information in its possession. Accordingly, the cases of *United States* v. *Aug. F. Stauff & Co.*, 25 C.C.P.A. (Customs) 215, T.D. 49306, and *United States* v. *H. S. Dorf & Co. of Pa., Inc.*, 36 C.C.P.A. (Customs) 29, C.A.D. 392, cited by respondent, are not applicable herein.

Based upon all the facts disclosed by this record, it is apparent that petitioners were aware of their duty to properly enter the merchandise and, in fact, actively supplied information relative to the prices of the imported merchandise to the examiner in New York with the understanding that it would be circularized to all ports of the country through the Customs Information Exchange. It could not, therefore, be said that the petitioners' disposition was passive, as a full and candid disclosure of all material facts bearing on the merchandise imported was disclosed to customs officials. Since petitioners entered merchandise at a number of ports throughout the United States and the information was funneled through the appraiser at New York, it is conceivable that an oversight such as was made herein could occur. It would not be likely that a prudent businessman would advise customs that the value of deformed steel concrete reinforcing bars was $135 per thousand kilos and intentionally subsequently enter such merchandise at a lower value.

On the matter of additional charges for deforming and size, there is conclusive evidence that an honest difference of opinion existed between petitioners and United States customs officials. It would appear that the practices among the various mills vary as to including the additional charges in the base price during times when the market was good and adding them in addition to the base price at other periods.

Accordingly, we are of the opinion that the entering of the merchandise at values less than those found upon appraisement was without any intention to defraud the revenue of the United States, or to conceal or misrepresent the facts of the case, or to deceive the appraiser as to the value of the merchandise.

The petitions are granted and judgment will be entered accordingly.